**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TERESA L. COX, | ) | NO. ED CV 14-372-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | **AND ORDER OF REMAND** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a Complaint on March 5, 2014, seeking review of the denial of social security disability benefits.  The parties filed a consent to proceed before a United States Magistrate Judge on April 3, 2014.

1    Plaintiff filed a motion for summary judgment on August 6, 2014.

2    Defendant filed a motion for summary judgment on November 5, 2014.

3    The Court has taken both motions under submission without oral

4    argument.  <u>See</u> L.R. 7-15; "Order," filed March 14, 2014.

5

6                **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

7

8    Plaintiff asserts disability since February 2, 2010, based on

9    alleged physical and mental impairments (Administrative Record

10   ("A.R.") 160-70, 183).  An Administrative Law Judge ("ALJ") examined

11   the medical record and heard testimony from Plaintiff and a vocational

12   expert (A.R. 10-379).  The ALJ found Plaintiff has severe degenerative

13   disc disease, obesity, diabetes, asthma, obstructive sleep apnea, and

14   bipolar disorder, but retains the residual functional capacity to

15   perform a limited range of sedentary work (A.R. 12, 14).[1]  In

16   _____

17        [1]   The ALJ found that Plaintiff:

18        can work in an environment with no more air pollutants
          than in an air-conditioned environment; she cannot work
19        at heights or on ladders; she cannot drive and be
          exposed to dangerous machinery; she cannot reach above
20        her head with either arm; she can occasionally bend and
          twist; she can lift 10 pounds occasionally and 10
21        pounds frequently; she can sit, stand, and walk six
          hours out of an eight-hour day; she can sit for 30
22        minutes at a time and she can stand and stretch for one
          minute or less before resuming sitting; she can stand
23        and walk for 30 minutes at a time with sitting for one
          minute out of every 30 minutes; she cannot do work
24        involving quick decision making or rapid physical
          activity like a rapid assembly line; she cannot
25        interact with the public; and she can have non-intense
          and occasionally [sic] interactions with the coworkers
26        and supervisors.
27

28                                              (continued...)

2

1  accordance with the vocational expert's testimony, the ALJ also found
2  Plaintiff can perform work as an "address clerk" or "bench hand," and
3  therefore is not disabled (A.R. 20-21; see also A.R. 52-54 (vocational
4  expert testimony)).  The Appeals Council denied review (A.R. 1-3).

5

6                           **STANDARD OF REVIEW**

7

8       Under 42 U.S.C. section 405(g), this Court reviews the
9  Administration's decision to determine if: (1) the Administration's
10 findings are supported by substantial evidence; and (2) the
11 Administration used correct legal standards.  See Carmickle v.
12 Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,
13 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner
14 of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).
15 Substantial evidence is "such relevant evidence as a reasonable mind
16 might accept as adequate to support a conclusion."  Richardson v.
17 Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted);
18 see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

19

20                             **DISCUSSION**

21

22      Plaintiff contends that the ALJ materially erred in the
23 evaluation of the medical opinion evidence.  For the reasons discussed
24 below, the Court agrees.  Remand is appropriate.

25 ///

26 ///

27

28      [1](...continued)
   (A.R. 14).

I.    **Summary of the Relevant Medical Record.**

Plaintiff reported a history of cervical spine pain following a car accident in 1993 (A.R. 33, 228).  On January 18, 2009, Plaintiff went to the Desert Valley Hospital with complaints of right arm pain and shoulder pain from a recent fall at work (A.R. 313-25). Plaintiff's treating doctor ordered her off work (A.R. 323). Plaintiff was not released back to work until July 22, 2009 (A.R. 241).

On August 26, 2009, orthopedic surgeon Dr. Rajiv Puri examined Plaintiff and found she had a limited range of motion in the cervical spine with left arm pain, limited left shoulder motion in abduction due to impingement, slightly decreased sensation in the C5 and C6 dermatomes on the left hand, and hypoactive reflexes on both sides (A.R. 229).  Plaintiff complained of worsening pain in the neck and left upper extremity (A.R. 229).  Dr. Puri diagnosed degenerative disc disease of the cervical spine with radicular pain and numbness in the left arm, and calcific tendinitis of the left shoulder for which he gave Plaintiff a cortisone injection (A.R. 229; see also A.R. 230 (radiology report)).  On September 16, 2009, Dr. Puri reviewed a cervical spine MRI showing degenerative disc disease, especially at C4-5, C5-6, and C6-7, causing foraminal stenosis, confirmed by x-rays (A.R 228; see also A.R. 231-32 (cervical spine MRI dated September 9, 2009)).  Dr. Puri indicated that Plaintiff would be a candidate for anterior cervical discectomy and fusion from C4 to C7, since Plaintiff's pain and numbness were not getting any better with conservative treatment (A.R. 228).  There is no record of surgery,

4

1    however.

2

3        On February 2, 2010, Plaintiff reportedly took a "stress leave"

4    from work (A.R. 252).  Plaintiff was going through a divorce and

5    assertedly felt depressed (A.R. 237, 241, 252).  Plaintiff did not

6    return to work (A.R. 183, 363).[2]

7

8        High Desert Primary Care Physician's Assistant, Teresa Podgorski,

9    treated Plaintiff from August of 2011 through July of 2012 (A.R. 326-

10   58).  On March 12, 2012, Plaintiff was prescribed Norco for her neck

11   pain with radiculopathy (A.R. 334-35).  On March 30, 2012, Podgorski

12   referred Plaintiff for a neurosurgical consultation for cervical disc

13   degeneration (A.R. 350).  Authorization was provided for Plaintiff to

14   see Dr. Ali H. Mesiwala for a consultation and two follow up visits

15   (A.R. 348).  An MRI of Plaintiff's cervical spine on June 8, 2012,

16   showed mild-to-moderate multilevel degenerative changes within the

17   cervical spine, most prominent from C4-5 through C6-7 and "no

18   significant interval change" from the September, 2009 MRI (A.R. 343-

19   44).  On July 30, 2012, Plaintiff reported for a follow up visit after

20   her MRI (A.R. 327-29).  Plaintiff complained of chronic neck pain with

21   radiculopathy, fatigue, decreased ability to concentrate, and

22   depression (A.R. 327).  Podgorski noted that Plaintiff had cervical

23   disc degeneration and related conditions, controlled type 2 diabetes

24

25        [2]    Dr. Warris Walayat treated Plaintiff for mental health

26   issues from March of 2012 through at least August of 2012 (A.R.
     359-68).  Dr. Walayat diagnosed bipolar disorder and anxiety

27   (A.R. 360-62).  At various times, Plaintiff was prescribed
     combinations of Wellbutrin, Zoloft, Ritalin, Abilify, Xanax, and

28   Trileptal (A.R. 243-44, 252-59, 287, 314, 330, 333, 337, 360-63).

mellitus, hyperlipidemia, episodic mood disorders, and bipolar I
disorder (A.R. 328-29).

In accordance with Podgorski's referral, Plaintiff consulted with
Dr. Mesiwala to determine whether Plaintiff required surgery for her
back and neck pain.  See A.R. 349 (request for consultation), A.R.
370-79 (consultation records).  Dr. Mesiwala examined Plaintiff and
reviewed the MRIs of Plaintiff's cervical spine from September of 2009
and June of 2012, and an x-ray of Plaintiff's lumbar spine from
November of 2009 (A.R. 370-71; see also A.R. 231-32, 343-44 (cervical
spine MRIs); A.R. 248 (lumbar spine x-ray)).  On examination,
Plaintiff had restricted range of motion in flexion and extension of
her neck secondary to pain, restricted range of motion in flexion,
extension and twisting of her back secondary to pain, motor strength
of 5/5 in her upper and lower extremities, intact sensation, no
evidence of cerebellar dysfunction, normal gait, and normal muscular
tone and bulk (A.R. 370-71).  Dr. Mesiwala recommended a series of
epidural injections for pain management in Plaintiff's cervical spine
– concluding that surgery for the cervical spine was not required at
the time – and ordered an MRI of Plaintiff's lumbar spine to determine
if surgery might be necessary for deformities seen on the available x-
rays (A.R. 371-72).  There is no MRI of Plaintiff's lumbar spine
within the available record.

Dr. Mesiwala completed a "Medical Opinion Re: Ability to Do Work-
Related Activities (Physical)" form on September 4, 2012, the day of
his initial consultation (A.R. 377-79).  Dr. Mesiwala indicated that
Plaintiff: (1) could lift and carry 10 pounds occasionally and

frequently; (2) could sit less than two hours and stand less than two hours in an 8-hour day; (3) could sit 10 minutes and stand 10 minutes before needing to change positions; (4) must walk around every 10 minutes for 10 minutes; and (5) must be able to shift at will from sitting or standing/walking (A.R. 377-78).  Dr. Mesiwala also indicated that Plaintiff could never twist, stoop (bend), crouch, or climb ladders, and could climb stairs only occasionally (A.R. 378).  Dr. Mesiwala recorded no impairment in reaching, handling, fingering, feeling, or pushing/pulling, no environmental restrictions, and indicated that Plaintiff's condition would cause her to be absent from work approximately once a month (A.R. 378-79).  When asked what medical findings support the assigned limitations, Dr. Mesiwala wrote "cervical deg[enerative] disc disease" and "[Plaintiff] has pain related to cervical [degenerative disc disease]" (A.R. 378-79).  Dr. Mesiwala's "Medical Opinion, etc." is the only examining source opinion in the record concerning Plaintiff's ability to work.

A non-examining State agency review physician, Dr. George N. Lockie, reviewed the available record and opined that Plaintiff was not disabled as of May 26, 2011.  See A.R. 56-67 ("Disability Determination Explanation").  Although Dr. Lockie requested Dr. Puri's medical records, there reportedly was no medical opinion evidence for Dr. Lockie to review (A.R. 58, 64).  Dr. Lockie did review the July, 2009 left shoulder x-ray and the November, 2009 lumbar spine x-ray (A.R. 59; see also A.R. 247-48 (x-rays)).  Dr. Lockie believed that a consultative examination was required because "additional evidence needed is not contained in the records of the individual's medical sources" (A.R. 59).  However, Plaintiff did not receive any

consultative examination.  Dr. Lockie opined that Plaintiff would be
capable of performing simple repetitive tasks involving: (1) lifting
and carrying 20 pounds occasionally and 10 pounds frequently;
(2) standing and/or walking approximately six hours in an eight-hour
workday, and sitting approximately six hours in an eight-hour workday;
(3) unlimited pushing and/or pulling within the weight limits;
(4) occasional climbing of ramps, stairs, ladders, ropes, and
scaffolds; (5) occasional stooping, kneeling, crouching, and crawling;
and (6) frequent balancing, with no other noted limitations (A.R. 60-
63).

On reconsideration, non-examining State agency review physician
Dr. Pamela Ombres opined that Plaintiff was not disabled as of
December 21, 2011.  See A.R. 82-93 ("Disability Determination
Explanation").  Dr. Ombres examined the available medical records
including Dr. Puri's records and the September, 2009 MRI of
Plaintiff's cervical spine (A.R. 83, 86; see also A.R. 228-32 (Dr.
Puri's records and September, 2009 MRI)).  Like Dr. Lockie, Dr. Ombres
indicated that a consultative examination would be required, yet no
consultative examination was ever performed (A.R. 86).

**II.  The ALJ Materially Erred in Connection with the Determination of
Plaintiff's Residual Functional Capacity.**

In determining Plaintiff's physical residual functional capacity,
the ALJ gave "significant weight, but not great weight" to the non-
examining State agency physicians' opinions concerning Plaintiff's
ability to work, but added the ALJ's own restrictions in light of

1   Plaintiff's asthma, sleep apnea, diabetes, and her subjective

2   complaints of pain (A.R. 18; see also A.R. 14 (defining residual

3   functional capacity as including environmental and hazard

4   restrictions, as well as restrictions of no reaching above the head

5   with either arm, and sitting/standing restrictions not found by any

6   medical source)).  The ALJ purportedly gave "some weight" to Dr.

7   Mesiwala's opinion as "generally consistent with the claimant's mild

8   treatment record," but found Dr. Mesiwala's sitting, standing, and

9   walking restrictions "too restrictive given Dr. Mesiwala's generally

10  mild examination" of Plaintiff (A.R. 17).  The ALJ did not discuss Dr.

11  Mesiwala's opinion that Plaintiff should never twist, stoop (bend), or

12  crouch (A.R. 17; see also A.R. 14 (residual functional capacity

13  providing for occasional bending and twisting)).

14

15       On the present record, the ALJ erred in rejecting Dr. Mesiwala's

16  opinion in favor of the opinions of the non-examining State agency

17  physicians.  The opinion of an examining physician generally should

18  receive more weight than the opinion of a non-examining physician.

19  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  In fact,

20  "[t]he opinion of a nonexamining physician cannot by itself constitute

21  substantial evidence that justifies the rejection of the opinion of

22  . . . an examining physician."  Lester v. Chater, 81 F.3d 821, 831

23  (9th Cir. 1995); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

24  2007) ("When [a nontreating] physician relies on the same clinical

25  findings as a treating physician, but differs only in his or her

26  conclusions, the conclusions of the [nontreating] physician are not

27  'substantial evidence.'"); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4

28  (9th Cir. 1990) (nonexamining physician's conclusions, with nothing

more, not substantial evidence in light of "the conflicting observations, opinions, and conclusions" of examining physician).

As summarized above, the State agency physicians initially relied on the 2009 x-rays of Plaintiff's left shoulder and lumbar spine, and on reconsideration relied on the 2009 MRI of Plaintiff's cervical spine and Dr. Puri's clinical observations.  Dr. Mesiwala also relied in part on the 2009 lumbar spine x-ray, 2009 MRI of Plaintiff's cervical spine, and the June, 2012 MRI of Plaintiff's cervical spine (which was unchanged from the 2009 MRI).  Because the opinions of the State agency physicians regarding Plaintiff's ability to work represent nothing more than conflicting conclusions based on their review of the same clinical records reviewed by Dr. Mesiwala, the opinions of the State agency physicians cannot furnish substantial evidence to support the ALJ's residual functional capacity determination.  <u>See id.</u>  Buttressing this conclusion is the fact that the State agency physicians expressly qualified their opinions by stating that sufficient development of the medical record required a consultative examination that was never performed.

Additionally, the record contains no assessment by a treating or examining physician supporting the sitting, standing, and walking limitations the ALJ adopted.  Rather, the ALJ appears to have made his own lay assessment of what the ALJ thought were "reasonably congruent limitations" for Plaintiff's physical condition (A.R. 18).  Absent expert medical assistance, the ALJ could not competently translate the medical evidence into a residual functional capacity assessment.  It is well-settled that an ALJ may not render his or her own medical

1  opinion or substitute his or her own diagnosis for that of a
2  physician.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1102-03 (9th Cir.
3  1999) (ALJ erred in rejecting physicians' opinions and finding greater
4  residual functional capacity based on claimant's testimony that he
5  took a road trip; there was no medical evidence to support the ALJ's
6  determination); <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998) (an
7  "ALJ cannot arbitrarily substitute his own judgment for competent
8  medical opinion") (internal quotation marks and citation omitted);
9  <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not
10  succumb to the temptation to play doctor and make their own
11  independent medical findings"); <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156
12  (9th Cir. 1975) (an ALJ is forbidden from making his or her own
13  medical assessment beyond that demonstrated by the record).  Rather
14  than adopting his own lay assessment of Plaintiff's limitations, the
15  ALJ should have ordered an examination and evaluation of Plaintiff by
16  a consultative physician.  <u>See id.</u>; <u>see also</u> <u>Reed v. Massanari</u>, 270
17  F.3d 838, 843 (9th Cir. 2001) (where available medical evidence is
18  insufficient to determine the severity of the claimant's impairment,
19  the ALJ should order a consultative examination by a specialist);
20  <u>accord</u>, <u>Kish v. Colvin</u>, 552 Fed. App'x 650 (2014); <u>see generally</u> <u>Brown</u>
21  <u>v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a
22  special duty to fully and fairly develop the record to assure the
23  claimant's interests are considered.  This duty exists even when the
24  claimant is represented by counsel.").
25  ///
26  ///
27  ///
28  ///

1 | **III. Remand is Appropriate.**

2

3     Because the circumstances of this case suggest that further

4 administrative review could remedy the ALJ's errors, remand is

5 appropriate.  See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011);

6 see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an

7 administrative determination, the proper course is remand for

8 additional agency investigation or explanation, except in rare

9 circumstances); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)

10 (court will credit-as-true medical opinion evidence only where, inter

11 alia, "the record has been fully developed and further administrative

12 proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d

13 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather

14 than for the immediate payment of benefits is appropriate where there

15 are "sufficient unanswered questions in the record").

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1                                    **CONCLUSION**

2

3        For all of the foregoing reasons,[3] Plaintiff's and Defendant's

4   motions for summary judgment are denied and this matter is remanded

5   for further administrative action consistent with this Opinion.

6

7        LET JUDGMENT BE ENTERED ACCORDINGLY.

8

9        DATED: December 4, 2014.

10

11                              _____/S/_____
                                       CHARLES F. EICK
12                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

_____

25        [3]    The Court has not reached any other issue raised by
26   Plaintiff except insofar as to determine that reversal with a
     directive for the immediate payment of benefits would not be
27   appropriate at this time.  "[E]valuation of the record as a whole
     creates serious doubt that [Plaintiff] is in fact disabled."  See
28   Garrison v. Colvin, 759 F.3d at 1021.